■Wright, J.
It appears from the case that suit was brought to foreclose the Reeder mortgage in 1842. Practically the case is allowed to slumber until 1868. In the *184 meantime innocent parties purchase the property, without other than constructive notice.
It is claimed by counsel for plaintiff in error, Pox, that there was such a Us pendens as to charge all persons with notice.
The general rule on this subject is thus laid down in Ludlow v. Kidd, 8 Ohio, 542 :
“ The principle that the purchaser of the subject-matter of a suit pendente lite acquires no interest as against the plaintiff's title, whether legal or equitable, is too well established to be now questioned. Such sale as against the plaintiff is considered a nullity, and he is not bound to take notice of it. The decree of the court binds the property in the hands of such purchaser, although he is no party to the suit, and paid a full price for it, and had, in fact, no notice of the pending of the suit, or the claim of the plaintiff*. He is chargeable with constructive notice of the pending of such suit, so as to render his interest in the subject of it liable to its event.”
Other authorities cited by plaintiff in error are to the same effect. With regard to many of them, however, it maybe observed that the question arising in this ease was not presented. That question is, that to make lis pendens available as notice to subsequent innocent purchasers, there must be a close and continuous prosecution of the suit.
Por instance, in the case of Ludlow v. Kidd, the question decided was that where a bill was dismissed on final hearing and that decree of dismissal reversed on bill of review purchasers after dismissal and before bill of review filed, were not pendente lite purchasers and were protected.
The court seem to have gone upon the idea that the dismissal ended the case, being a final decree, .and “ that a final decree is not notice of the matters in controversy.” This view is sustained by many authorities. It is the pendency of the suit that creates notice. Worsely v. Earl of Scarborough, 3 Atk. 332; Turner v. Crebill, 1 Ohio, 373.
So in Bennet's Lessee v. Miah Williams, 5 Ohio, 461, also cited by counsel for plaintiff* in error. The suit was begun *185 by publication. Two weeks after the termination of publication, defendant conveyed the property which was the subject of controversy. This conveyance was held to be pendente lite, and amounted to nothing. In such a case it is very evident that no question could arise as to the “ close and vigorous prosecution of the suit.”
In Lessee of Stoddard v. Myers, 8 Ohio, 203, the question was in no way involved, though the case itself shows a prosecution both close and vigorous.
In the case of Gibbon v. Dougherty, 10 Ohio St. 365, an action was instituted to subject to the payment of a judgment a debt due from W. to the judgment debtor. After W. was served in the action, the judgment on which it was founded was set aside, and a new one rendered. Between the setting aside of the old and the rendition of the new judgment, ~W. paid his debt to the judgment debtor. This was held to be a payment Us pendens, and did not relieve W. from liability to account. But nowhere in the case does any question of continued prosecution arise.
In Porter v. Wood & Oliver, 18 Ohio St. 550, the court does say, as counsel quote: “ It is very true that, while property is the subject-matter of a pending litigation, outside parties are bound to take notice of the rights and claims of parties to such litigation.” And they also say, in another part of the opinion, that “ the doctrine of lis pen-dens, we think, has no application to a case of this kind.”
In Hunter v. The Earl of Hopetoun, 4 McQueen, 972, this is said : “ A suit, though asleep, continues in pendente till disposed of, and the parties are still at issue, though the Us may have been for years comatose.”
“ An action was commenced in 1845, and a defense lodged. In 1847, the proceedings ceased, and the action became dormant. Held (eighteen years afterward) that the Us, though still asleep, was nevertheless in pendente, and liable to be roused at the volition of either party.” But in this case, no rights of third parties had intervened to which the principle of Us pendens could apply. The remarks of the court applied to plaintiff and defendant, who were the *186 only parties interested, and, doubtless, as to them the lis may be pending so long as the rights of others are not affected thereby.
Counsel for plaintiff' in error cite the following as the holding in Gossom v. Donaldson, 18 B. Mon. 237 : “ It is not necessary that a suit shouldbe prosecuted even with ordinary diligence in order to retain the character of a Us pendens.” Almost that exact language is used by the court, but the remainder of the sentence is, 11 but as a Us pendens is created by the institution of the suit, it can only be lost by unusual and unreasonable negligence in the prosecution.” There is, therefore, a negligence of prosecution that may interfere with the application of the rule Us pendens.
The facts in this case from 18 B. Mon. are quite complicated, but this may be gathered as the action of the court. A pendente lite purchaser was held to acquire no rights by his purchase; or, at least, any right or title he did acquire was subordinate to that which was invested in the purchaser at the judicial sale in the cause which was the Us in question. But at the same time the court held that the purchaser pendente lite, having had adverse possession for upwards of twenty-five years, had a good title as against him who purchased at the sale in the very suit to which the principle of Us pendens was applied; and this upon the ground that the claim was stale, and not entitled to any favor in.a court of equity.
In Wickliffe’s Ex’r v. Breckenridge, 1 Bush. 443, the proposition is thus laid down: “ While the Us pendens may be lost by neglecting.to prosecute, a reasonable excuse for the delay complained of is always available to keep up the Us pendens.”
In that case, though the suit had long been pending, the court found sufficient excuse- in existing circumstances.
That the position contended for by defendants in error is supported by considerable authority, may be shown.
Sugden on Vendors, in stating the rule on Us pendens, adds the qualification: “ But the plaintiff must not be *187 guilty of laches in the prosecution of his suit.” 2 Bug. Vend. 535, 8th Ana. Ed.
Sugden cites Preston v. Tubbin, 1 Vern. 286. The case says: “ When a man is to be affected with a Us pendens, there ought to be a close and continued prosecution.” Kinsman v. Kinsman, 1 Russ. & Mylne, 617.
In Murray v. Ballou, 1 Johns. Chy. 566, the effect of lis pendens as notice seems to depend upon the fact of a vigorous prosecution.
In Watson v. Wilson, 2 Dana, 407, a principal case in Kentucky, Wilson brought suit to subject land of one 'Benbrook to the payment of a judgment, the land was sold on decree in the case, and Wilson bought it. In the meantime, while this suit was pending, the same land was sold on an execution against Benbrook to a party through whom it came to Watson. Thus, there were two parties claiming under judicial sales, and one of these sales was in a suit instituted during the pendency of the other suit.
The rule of Us pendens was held not to apply, and the purchaser pendente lite held the property, because the first suit had abated by death, and there was a delay of revivor for ten years, which was unexplained. The court say it is proper that a party “ should be held to something like reasonable diligence in the prosecution of his suit, to entitle himself to the benefit of the rule.” The case discusses the authorities, showing, as the books generally do, that the rule originated with Lord Bacon. It is true that this is a case of abatement and revivor, and there may be a difference between this class of cases where the suit, for a time at least, is at an end, and those where no such fact exists.
In Erhman v. Kendrick, 1 Met. (Ky.) 146, suit was brought in 1852 to enforce a mechanic’s lien, which was ready for hearing in 1853. In 1856, the lien-debtor mortgaged the property. In 1857, this mortgage was sought to be foreclosed, and the mechanic’s lien claimed priority. It was held that this priority was lost, because no action in the suit to enforce it had been taken for four years. The court re-assert the principle that a party who claims the benefit *188 of lis pendens as against a bona fide purchaser, must show that his suit has been prosecuted with reasonable diligence. The court say: “Public policy, therefore, as well as the legislative intention thus evinced, requires that, so far as the rights of third persons are concerned, the lien should be enforced within a reasonable time after the suit for that pui’pose has been instituted.
Here the suit was permitted to remain on the docket for four years after it had been prepared for tidal, without any decree having been obtained for the enforcement of the lien, and no reason for the delay has been offered. This we deem to be such gross negligence as to deprive the party of all right to its enforcement against the persons claiming under the mortgage.”
It will be noticed that this case puts the enforcement of the rule of lis pendens upon the question of negligence. That the rule itself, though undoubted, will not be applied where the party has been negligent to the injury of innocent parties. As Sugden says in an early edition of his work, the application of the rule may rest upon the question whether or not the party seeking its benefit has been “ guilty of laches.” 2 Dana, 411.
That the party must use reasonable diligence in the prosecution of his suit is also held in Clarkson v. Morgan, 6 B. Mon. 448. The subject is also discussed in French v. Loyal Co., 5 Leigh, 671, and Diamond v. Lawrence County, 37 Penn. St. 353.
The case of Trimble v. Boothby, 14 Ohio, 109, was a case of abatement by death, and a dormancy of the proceedings for many years. The court recognized as settled the proposition, that “to authorize the doctrine of lis pendens, the prosecution of the suit must be close and continuous.”
It is not necessary for us now to determine upon what principle the rule of lis pendens is based. One set of authorities rest it upon the idea of notice — that all the inhabitants of the realm are supposed to pay attention to and be familiar with what is going on in courts of justice, and having knowledge thereof, can not interfere therewith by *189 dealing with, property already the subject of litigation. Another class of authorities say the foundation of the idea is in public policy. Bellamy v. Sabine, 3 Jur. N. S. 943. Placing the rule upon either foundation, its benefits may be lost by negligence. As Sugden says, it turns upon the question whether or not the party has been guilty of laches.
¥e hold, therefore, that though a party may have the benefit of the rule Us pendens, yet, as against bona fide purchasers without actual notice, that benefit may be lost by such negligence, delays, or laches as are not only culpable in himself, but injurious to others. In the case at bar a decree is rendered in 1842, and, practically, no further action is taken until 1869, a period of twenty-seven years. There is no right of action not barred in twenty-one years, saving disabilities, and it is not the duty of the court to add to the statute, or give parties longer periods than it prescribes. The doctrine of implied or constructive notice, which is an equitable doctrine, does not require, nor does public policy demand it.
Had this suit not intervened, these purchasers might have satisfactorily sheltered themselves under the statute of limitations as against the mortgage. It appears that the mortgagee permitted Reeder to remain in possession. It is alleged, and not denied, that this possession was actual, notorious, continued, exclusive, and adverse for a period of more than twenty-one years, and defendants claim this protection.
A mortgage may thus be barred. Robinson v. Fife, 3 Ohio St. 551. The suit, however, is begun, and the plaintiffs seek to protect themselves under the rule Us pendens. If they seek the application of this rule, they must take it with the liabilities and responsibilities the rule itself imposes. One of these responsibilities is that it must be prosecuted with some such degree of continuity as will manifest signs of vitality. It will not do to allow a suit brought to lapse into quietude for an indefinite series of j^ears, and then claim rights ttttdef it as against those whó *190 have innocently purchased. The negligence is such that its results must recoil upon the party rather than injure those who have been guilty of no wrong.
As to the property on the east side of Main street, the suit was brought in 1840, and no decree ever taken. If this was a Us pendens, the delay in taking no further action is such negligence as prevents action now.
As to the property on the west side, if the decree was a final one, the rule lis pendens does not apply. If, upon the other hand, the decree is an interlocutory one, and so merely a step in the Us pendens, the failure to take any action for such a long period of time is fatal to the right of recovery. The lapse of time is such that equities become stale, and whether we consider that such lapse raises a presumption of an abandonment of the claim, or that the delay amounts to negligence that may well bar, we hold that under the peculiar circumstances of the case, when the mortgagor has been allowed to remain in possession, dealing with the property for a time longer than would enable the statute of limitations to confer a title, the rights of the mortgagee can not now be enforced.

Judgment of the district court affirmed.